# 22-15804

IN THE

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

### FOR THE NINTH CIRCUIT

HAROLD DAVIS,
Plaintiff-Appellant,

v.

PINTEREST, INC.,
Defendant-Appellee.

*Appeal from the United States District Court
for the Northern District of California
Case No. 19-cv-07650
The Honorable Haywood S. Gilliam, Jr., Presiding*

## REPLY BRIEF OF PLAINTIFF-APPELLANT HAROLD DAVIS

Sue J. Nam
Michael R. Reese
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
Email: *snam@reesellp.com*

*Counsel for Plaintiff-Appellant Harold Davis
(Additional counsel listed on signature page)*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................iii

INTRODUCTION ..................................................................... 1

ARGUMENT .......................................................................... 3

I.    The Lower Court Erred in Concluding that Pinterest Met Its Burden on Summary Judgment on Its Affirmative Defense Under § 512(c)(1) ...................................................................3

II.    The Lower Court Abused Its Discretion in Excluding Instances of Infringement that Clearly Lack a Causal Connection Between the Alleged Infringement and the "Storage at the Direction of a User" ..........................................................12

    A.    Mr. Davis Did Not Waive the Right to Challenge the Preclusion of Claims ................................................14

    B.    The Lower Court's Preclusion of Claims Was Not a "Just" Sanction Authorized by Rule 16 ...................................17

    C.    The Lower Court's Preclusion of Claims Was Not Authorized by Rule 37 ............................................20

    D.    The Lower Court's Preclusion of Claims Was an Unduly Harsh Sanction ........................................................23

CONCLUSION ....................................................................... 28

CERTIFICATE OF COMPLIANCE FOR BRIEFS (FORM 8) ..................... 30

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020 (9th Cir. 2013)..................7

*Incredible Features, Inc. v. Backchina, LLC*,
    Case No. CV 20-943-DMG (RAOx), 2021 WL 6337194 (C.D. Cal. 2021) .......11

*Liberty Ins. Corp. v. Brodeur*, 41 F.4th 1185 (9th Cir. 2022) ................................25

*Mavrix Photographs LLC v. LifeJournal, Inc.*,
    873 F.3d 1045 (9th Cir. 2018) ......................................................................... 4, 26

*Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 739-40 (9th Cir. 2021) ..............25

*New Prime Inc. v. Oliveria*, 139 S.Ct. 532 (2019) ...................................................9

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007) ............. 10, 11

*Price v. Seydel*, 961 F.2d 1470 (9th Cir. 1992) .......................................................25

*R&R Sails, Inc. v. Ins. Co. of Pennsylvania*,
    673 F.3d 1240 (9th Cir. 2012) ...............................................................................28

*Totally Her Media, LLC v. BWP Media USA, Inc.*, CV 13-08379-AB (PLAx),
    2015 WL 12659912 (C.D. Cal. Mar. 24, 2015) ...................................................12

*UMG Recordings, Inc. v. Shelter Capital Partners LLC*,
    718 F.3d 1006 (9th Cir. 2013) ................................................................... passim

*UMG Recordings, Inc. v. Veoh Networks, Inc.*,
    620 F.Supp.2d 1081 (C.D. Cal. 2008) ...................................................................4

*United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008) .......................... passim

*Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597 (9th Cir. 2018)........ passim

*Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19 (2d Cir. 2012) ..................... 3, 4, 6

*Warmenhoven v. NetApp, Inc.*, 13 F.4th 717 (9th Cir. 2021) ................................16

*Wong v. Regents of University of California*,
    410 F.3d 1052 (9th Cir. 2005) ................................................................... passim

iii

**Statutes**

17 U.S.C. § 512(c)(1).................................................................................. passim

17 U.S.C. § 512(d) ................................................................................. 11, 12

**Rules**

Civil L.R. 37-3 ............................................................................................24

Fed. R. Civ. P. 26(a)................................................................................ passim

Fed. R. Civ. P. 26(e)................................................................................ passim

Fed. R. Civ. P. 37(c)(1)........................................................................... passim

**INTRODUCTION**

Mr. Davis' position on appeal is simple and non-controversial: a court's application of statutes and rules cannot stray from their plain and express terms. Mr. Davis asks that this Court reverse the lower court's decision because the court failed to apply 17 U.S.C. § 512(c)(1) and Fed. R. Civ. P. 37(c)(1) in accordance with their respective clear and unambiguous language.

In contrast, Pinterest asks this Court to affirm the lower court's disregard of the language of § 512(c)(1) of the Digital Millennium Copyright Act ("DMCA"). But doing so would broadly provide safe harbor to Pinterest to do whatever it wants with copyrighted content, so long as "Plaintiff's works appear on Pinterest because users upload them." 1-ER-0027. This is contrary to the plain language of § 512(c)(1), which instead limits liability only when "infringement of copyright [is] ***by reason of*** the storage at the direction of a user." 17 U.S.C. § 512(c)(1) (emphasis added).

Pinterest also asks this Court to affirm the lower court's disregard of the language of Rule 37(c)(1)—the only authority the lower court cited in ruling that 16 out of 51 works listed in Mr. Davis' operative complaint and tens of thousands of alleged infringements based on Pinterest's notifications "are not at issue in this case." 1-ER-0017. The lower court precluded these claims as a sanction for those claims not meeting the court's "Deadline for Plaintiff to Serve Final Identification of Alleged Infringements." 1-ER-0015-17.

1

The requirement that a final identification of alleged infringements be served on Pinterest is not found in Rule 26(a) or (e), the only two predicate violations enumerated by Rule 37(c)(1). In fact, this requirement is not found in any federal rule, local rule, or the judge's individual rules. Instead, the requirement for Mr. Davis to serve on Pinterest a final identification of alleged infringements, a month before the close of Mr. Davis' fact discovery and three months before the close of Pinterest's fact discovery, was a bespoke obligation applicable only to Mr. Davis' copyright infringement claims pursuant to a scheduling order issued by the court. 6-ER-1408-09. Moreover, the lower court precluded these claims despite the fact that Pinterest was in exclusive control of the evidence that proved these claims; despite the fact that Pinterest failed to produce discovery in a timely manner; and despite the fact that Pinterest only produced this evidence upon court order after Mr. Davis moved to compel.

Because the lower court disregarded the "by reason of" language of the DMCA's § 512(c)(1) safe harbor and the predicate violations enumerated in Fed. R. Civ. P. 37(c)(1), the lower court's decision applying those provisions must be reversed.

## **ARGUMENT**

I.    **The Lower Court Erred in Concluding that Pinterest Met Its Burden on Summary Judgment on Its Affirmative Defense Under § 512(c)(1)**

Pinterest faults Mr. Davis for "devot[ing] fewer than 10 pages to his DMCA challenge" and contends that "it is both contrived and foreclosed by precedent." Answering Brief of Pinterest, Inc. ("Pinterest Br."), ECF No. 25, at 5. The reality is far different. There is scant precedent directly on point, and both sides cite the same appellate cases for their respective positions, namely *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006 (9th Cir. 2013), *Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597 (9th Cir. 2018), and *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19 (2d Cir. 2012). *See* Pinterest Br. at 48-59. The flood of pending litigation throughout the United States where copyright owners have challenged companies like Pinterest, which use copyrighted works for their commercial use without permission or compensation to copyright owners, attests to the lack of controlling precedent and the difficulties inherent in applying established intellectual concepts to new technologies.

What is clear, however, is the statutory language of § 512(c)(1) at issue in this case. Tellingly, Pinterest does not address the statutory language that expressly requires causal relationship—"by reason of"—between the challenged activities at issue here and "the storage at the direction of a user of material that resides" on Pinterest's system. 17 U.S.C. § 512(c)(1). Likewise, Pinterest entirely fails to address

3

this Court's holding interpreting § 512(c)(1):

> We restated in *Mavrix* what we had held in *UMG*: "Infringing material is stored at the direction of the user if the service provider ***played no role*** in making that infringing material accessible on its site or if the service provider carried out activities that ***were 'narrowly directed' towards enhancing the accessibility of the posts***."

*Motherless*, 885 F.3d at 606 (quoting *Mavrix Photographs LLC v. LifeJournal, Inc.*, 873 F.3d 1045, 1056 (9th Cir. 2018)) (emphasis added).

Similarly, the Second Circuit concluded that YouTube's related videos function was protected under § 512(c) because "the algorithm 'is closely related to, and follows from the storage itself,' and is 'narrowly directed toward providing access to material stored at the direction of users.'" *YouTube*, 676 F.3d at 40 (quoting *UMG Recordings, Inc. v. Veoh Networks, Inc.,* 620 F.Supp.2d 1081, 1092 (C.D. Cal. 2008)). Pinterest nowhere addresses the uncontroverted evidence that the challenged activities were not "'narrowly directed' towards enhancing the accessibility of the posts" or "closely related to, and follows from, the storage itself." *YouTube*, 676 F.3d at 40.

The record in this case established that user accessibility is not the only, or even the primary, reason Pinterest generates variants or uses artificial intelligence and algorithms. Certainly, Pinterest's algorithms are not closely related to, or follow from, the storage of user posts. By pinning Mr. Davis' images on Pinterest's platform, Pinterest users never asked to be tracked using the variants that Pinterest

created from Mr. Davis' works, never asked for displays of those variants in search results or feeds, never asked for tracking advertisements to be placed adjacent to Mr. Davis' images, and never asked for those variants to be sent to them in push notifications or notifications in emails. To the contrary, all of these actions resulted solely from Pinterest's variants, algorithms, artificial intelligence, and Pinterest's active role.

Pinterest creates variants so that its automated machine learning ("AutoML") can use the variant's content to effectively display advertisement. 5-ER-1095. Pinterest alone creates the variants, and Pinterest alone has control over what information from the original is retained in the variant. *See* 1-ER-0021 ("Mr. DeChant further testified that for variants created after approximately 2021, Pinterest ensures that they maintain preexisting metadata regarding copyright management information from the originals."). The variants allow Pinterest's artificial intelligence and algorithms to determine when and how those variants will be displayed for purposes of advertisement. *See* 2-ER-0050:7-25 ("A: Sure. So an advertiser or a small business, or just someone who wants to spend money on Pinterest, I can go and create content and then choose through the app to promote it. Pay to promote it. And those variants are what your Pinners that you're paying to see it, see.").

Pinterest uses proprietary algorithms that weigh not only "the interests of the user," but also considers "the desires of the advertiser" in delivering advertisements alongside Mr. Davis' works on Pinterest website and other Pinterest platforms. 6-ER-1372-1373 at ¶ 7. Regardless of whether the selection of advertisement variants ("Promoted Pins") and the selection of variants derived from user posts ("Organic Pins") are the "result of two separate processes," Pinterest Br. at 56, it is Pinterest—and solely Pinterest—that controls the selection and display of both variants in grid-view on its surfaces or feeds. Pinterest does not dispute that its users do not request the grid view of Organic Pins and Promoted Pins, do not control the grid view, and cannot opt out of seeing advertisements in the grid view. Rather, this is all done *by* Pinterest *for* Pinterest.

Pinterest argues that "[t]his Court has already considered and squarely rejected" Mr. Davis' challenge of Pinterest's activities. Pinterest Br. at 51 (citing *UMG* and *Motherless*). Not so. The automated functions challenged in those cases, namely transcoding and generating "Most Popular" lists, and even the "related video" function at issue in *YouTube*, 676 F.3d at 39-40, are from a long-ago technological era and are fundamentally different than what Mr. Davis challenged with respect to Pinterest.

Both *UMG* and *Motherless* dealt with service providers that hosted websites for peer-to-peer sharing of online content. Pinterest operates a more traditional

client-server model: Pinterest converts all content uploaded by its users, including Mr. Davis' works, into its own variants, which Pinterest then stores on its own servers and distributes from its own servers. *See generally Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1024-25 (9th Cir. 2013) (explaining client-server versus peer-to-peer networks). Pinterest copies, distributes, and displays its variants on website surfaces, emails, and app notifications that Pinterest alone controls, not only when users request that content, but also according to Pinterest's own needs to generate advertisement revenue. In contrast, the service providers in *UMG* and *Motherless* generated revenue from passively displaying advertisements alongside user content. *See UMG*, 718 F.3d at 1011; *Motherless*, 885 F.3d at 600. The crucial distinction is that Pinterest creates derivative works, *i.e.*, variants, from user content, then displays and distributes them, all for its own profit rather than user accessibility.

Pinterest nonetheless asks this Court to shoehorn this case into precedent that did not address these facts. In none of this Court's prior decisions did the claim of infringement center on what the website operators did with the content ***long after*** it was uploaded by the user. There was no allegation in past cases, as here, that the defendants coded the content in order to target advertisements to users or displayed the content on new website surfaces or distributed the content to users outside the website. Pinterest would have this Court extend safe harbor to whole categories of activities without considering the express terms of the § 512(c)(1) safe harbor or this

7

Court's interpretation of that language. *See* Pinterest Br. at 50-61.

Pinterest misstates Mr. Davis' position as limiting the reach of § 512(c)(1) based on whether infringement is in the context of advertisement or commercial gain. Pinterest Br. at 55-59. Mr. Davis certainly is not attempting "to limit the safe harbor to services with no 'commercial' dimension," as Pinterest argues. Pinterest Br. at 57. Rather, Mr. Davis simply asks that the § 512(c)(1)'s safe harbor be limited, as it explicitly states, to "infringement of copyright by reason of the storage at the direction of a user of material that resides" on Pinterest's system. 17 U.S.C. § 512(c)(1). Pinterest did not meet its burden of demonstrating that Pinterest carried "out activities that were 'narrowly directed' towards enhancing the accessibility of the posts." *Motherless*, 885 F.3d at 606. Rather, Mr. Davis presented sufficient evidence from which a jury could determine that Pinterest's activities at issue here—the making of derivative works from Mr. Davis' works to track user interaction with his works, the display of variants of Mr. Davis' works on advertising website surfaces to entice its users to engage with ads, and the display and distribution of variants of Mr. Davis' works in website notifications and emails sent by Pinterest to its users—were primarily for its advertisement business, not for user accessibility.

Pinterest also claims that "§ 512(c)'s safe harbor would be nullified if any connection between these functions [of copying, organizing, and making suggestions about user content] and advertising ousted a provider from it." Pinterest

8

Br. at 58. Again, Pinterest asks this Court to disregard the express text of § 512(c)(1) and put the notion of safe harbor on its head. The language of § 512(c) provides narrow exceptions to copyright infringement, which is a strict liability tort. The DMCA created "four safe harbors that preclude imposing monetary liability on service providers for copyright infringement that occurs as a result of *specified* activities." *UMG*, 718 F.3d at 1014 (emphasis added). *Cf. New Prime Inc. v. Oliveria*, 139 S.Ct. 532, 543 (2019) ("If courts felt free to pave over bumpy statutory texts in the name of more expeditiously advancing a policy goal, we would risk failing to take account of legislative compromises essential to the law's passage and, in that way, thwart rather than honor the effectuation of congressional intent.") (internal edits and quotation omitted).

As this case shows, service providers can couch virtually any use of copyrighted works on, and even outside, their website or app as "access-facilitating." Pinterest argues that the DMCA protects its distribution of Mr. Davis' works that Pinterest alone selected and sent to its users in email and app notifications because "[a]ny rendering of Davis's image in a notification would be of a user-uploaded image from a Pin" and "serve the same 'accessibility-facilitating functions' . . . , suggesting to users content they may be interested in." Pinterest Br. at 61-62. This same logic would immunize Pinterest mailing flyers displaying Pins of Mr. Davis' work to user's homes or projecting Pins of Mr. Davis' work on any screen, public or

9

private, that is visible to a user. Those displays and distributions of Mr. Davis' work would be sheltered from liability because those renderings also would have originated from "a user-uploaded image from a Pin" and "suggest[] to users content that they may be interested in." What prevents these absurd results is the language of § 512(c)(1) itself.

Pinterest next argues that the use of hyperlinks in email and app notifications does not constitute infringement, echoing the lower court's decision. Pinterest Br. at 60-61. However, Pinterest does not contest that the hyperlink in every notification is to a variant (*i.e.*, a copy) that it creates, then stores on, and distributes from its own servers. *See* 2-ER-0048:23-49:16; 2-ER-0066:6-9. Accordingly, Pinterest's notifications necessarily implicate Mr. Davis' exclusive right to reproduce, distribute, and publicly display his copyrighted works under *Perfect 10*'s "server rule."

In *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1160 (9th Cir. 2007), there was no dispute that Google copied and stored on its servers thumbnail versions of Perfect 10's copyrighted images. Google then communicated copies of those thumbnails from its servers to Google's users through its own website. This Court thus concluded, "Perfect 10 has made a prima facie case that Google's communication of its stored thumbnail images directly infringes Perfect 10's display right." *Id.* This Court distinguished the thumbnails that Google copied, stored on

10

Google's servers, and communicated on Google's website from the full-sized images that Google instead provided through HTML instructions directing a user's browser to an image on a third-party website and stored on a third-party server. This Court explained, "Because Google's computers do not store the [full-sized] photographic images, Google does not have a copy of the images for purposes of the Copyright Act." *Id.* at 1160. The determinative factor in infringement was whether "it is the website publisher's computer, rather than Google's computer, that stores and displays the infringing image." *Id.* at 1162. Here, it is uncontested that Pinterest, and Pinterest alone, copies Mr. Davis' works, stores them on Pinterest's servers, and communicates the images derived from Mr. Davis' works on Pinterest's website and in Pinterest's email and app notifications.

Pinterest then argues—without any case citation—that § 512(d) of the DMCA shields its notifications. *See* Pinterest Br. at 62-63. But Pinterest's conduct falls outside the scope of § 512(d) because, again, the hyperlinks in Pinterest's email and app notifications link back to its own variants stored on its own servers and displayed on its own website. Courts have concluded that § 512(d)'s safe harbor for "information location tools" applies only to search engines and for websites that furnish simple reference links to ***third party websites***. *See Incredible Features, Inc. v. Backchina, LLC*, Case No. CV 20-943-DMG (RAOx), 2021 WL 6337194, at *5 (C.D. Cal. 2021) (rejecting argument that § 512(d) applied because "Defendant did

11

not merely direct users to a third-party site that contained the Subject Images, it caused the Images to display on its own site"); *Totally Her Media, LLC v. BWP Media USA, Inc.*, CV 13-08379-AB (PLAx), 2015 WL 12659912, at *10 (C.D. Cal. Mar. 24, 2015) (the plaintiffs met requirements for safe harbor under § 512(d) because "the evidence is undisputed that none of the images at issue in this litigation were stored on Plaintiffs servers, and were only displayed on Plaintiff's website by hypertext links to third-party websites").

The lower court here erred because it ignored the "by reason of" requirement of § 512(c)(1)'s safe harbor. As this Court recognized, such language only shields "activities that were 'narrowly directed' towards enhancing the accessibility of the posts." *Motherless*, 885 F.3d at 606. The lower court improperly rewrote and misapplied § 512(c)(1) to provide safe harbor from ***any*** infringement ***whenever*** the storage of materials was at the direction of a user. Accordingly, the lower court's decision must be reversed.

**II.     The Lower Court Abused Its Discretion in Excluding Instances of Infringement that Clearly Lack a Causal Connection Between the Alleged Infringement and the "Storage at the Direction of a User"**

Unable to credibly argue that the activities challenged by Mr. Davis were "by reason of the storage at the direction of a user" and "narrowly directed" towards enhancing the accessibility of user posts, Pinterest devotes the bulk of its answering brief to justifying the lower court's preclusion of alleged infringements that were

served on Pinterest after the lower court's "Deadline for Plaintiff to Serve Final Identification of Alleged Infringements," 6-ER-1408. *See* Pinterest Br. at 3-5, 31-48, 59. Pinterest's arguments merely highlight Pinterest's improper conduct during discovery. Such misconduct resulted in the lower court's convoluted preclusion of alleged infringements that were clearly outside any DMCA safe harbor, such as the distribution of Plaintiff's works in Pinterest's emails to its users. While Mr. Davis, of course, was not free to disregard the lower court's orders, the lower court also did not have unfettered discretion to enforce a deadline that Pinterest manipulated by its own transgressions. *See Wong v. Regents of University of California*, 410 F.3d 1052, 1060 (9th Cir. 2005) ("Deadlines must not be enforced mindlessly, of course.").

Notably, the evidence at issue that the lower court precluded was found by the lower court to have been in the sole possession of Pinterest. 1-ER-0014. Plaintiff requested this information in discovery requests served six months before the close of factual discovery. 5-ER-1153. Pinterest first represented that such information did not exist. *Id.* Even after depositions of Pinterest's witnesses confirmed the opposite, *e.g.*, 2-ER-0075:23-0076:7, Pinterest still refused to produce this discovery. Only after Mr. Davis moved to compel production, and the magistrate judge ordered Pinterest to provide proper responses, did Pinterest finally identify documents that showed how often, and the dates on which, a duplicate or near-duplicate of Mr. Davis' works had appeared on a Pinterest feed or notification. *See* 1-ER-0013-14; 2-

13

ER-0035-39 at ¶¶ 19-30; 2-ER-0078-330; 3-ER-0332-0441; 3-ER-0442-0630; 4-ER-0632-0930; 5-ER-0932-1065; 5-ER-1066-77; 5-ER-1157-1161; 5-ER-1163-1230; 6-ER-1232-1297. All of this was produced *after* the close of Mr. Davis' factual discovery deadline, but *before* Pinterest's factual discovery deadline.

The lower court cited Rule 37(c)(1), and only Rule 37(c)(1), for precluding alleged infringements that were not disclosed pursuant to its scheduling order. However, the clear language of Rule 37(c)(1) only authorizes exclusion "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e)." Fed. R. Civ. P. 37(c)(1). The lower court abused its discretion because it imposed the severe sanction of excluding infringement claims for a violation of disclosure deadline that was a creation of the district court. Because Rule 26(a) or (e), as specifically enumerated in Fed. R. Civ. P. 37(c)(1), were not the basis for the exclusion, the lower court erred.

### A. Mr. Davis Did Not Waive the Right to Challenge the Preclusion of Claims

As an initial matter, this Court should reject Pinterest's position that Mr. Davis waived arguments by not raising it in the opening brief or below. *See* Pinterest Br. at 36, 38-39.

First, Pinterest attempts to couch the lower court's scheduling and discovery orders as "enforcement orders" and argue that these orders "expressly and independently precluded him from asserting new claims of infringement." Pinterest

14

Br. at 34-36. The obvious flaw in this argument is that neither of these orders "expressly" or "independently" did any such thing. Indeed, Pinterest does not point to any specific language in those orders. This is because ***nothing*** in the scheduling order or discovery order indicated that preclusion of infringement claims would be the consequence of failing to meet discovery deadlines. *See* 6-ER-1408-09; 6-ER-1383-94. It was not until the lower court's decision on summary judgment—the order appealed from—that the lower court actually precluded instances of infringements and concluded without support that 16 works and any "instances of alleged infringement from Pinterest's notifications are not at issue in this case." 1-ER-0017.

Pinterest relies upon *United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008) in support of its position, Pinterest Br. at 34, but Pinterest fundamentally misses the import of this decision as to the distinction between an enforcement order versus a sanction. There, this Court did not view the enforcement orders on ***interlocutory appeal*** as a sanction precisely because the district court had not yet applied those orders to any concrete negative effect at trial. This Court explained:

> At the outset, we emphasize that we are addressing only the preclusive effect of the enforcement orders as they currently stand because, apart from this interlocutory appeal, the government has thus far sought no relief from the district court's orders with respect to any particular excluded witness. ***We do not know whether the district court would be persuaded to allow the government to add or substitute one or more new witnesses for good cause.***

15

*W.R. Grace*, 526 F.3d at 514 (emphasis added).

Here, Mr. Davis sought relief from the lower court's scheduling and discovery orders but did not seek an interlocutory appeal when the district court denied relief. Instead, he appealed the final decision where the lower court, under the heading "Precluding Untimely Alleged Infringements," for the first and only time barred infringement claims on his motion for summary judgment as a sanction under Rule 37(c)(1). 1-ER-0015-17. The lower court also never cited Rule 16 or any other authority for this sanction anywhere in the decision from which Mr. Davis appealed. Thus, Pinterest "is thus wrong to suggest that an appellant must address all *possible* alternate grounds for affirmance—even those not ruled upon by the district court— in an opening brief." *Warmenhoven v. NetApp, Inc.*, 13 F.4th 717, 729 (9th Cir. 2021) (italics in original).

Second, Pinterest concedes that Mr. Davis argued below that the lower court improperly precluded his infringement claims under Rule 37(c)(1). Pinterest nonetheless claims that Mr. Davis somehow forfeited his ability to argue on appeal that there was no predicate violation of Rule 26(a) or (e) as enumerated by Rule 37(c)(1). *See* Pinterest Br. at 38-39. Mr. Davis is hardly raising a new argument or new theory simply by pointing to the language of Rule 37, which was previously cited to the lower court. *See Puerta v. United States*, 121 F.3d 1338, 1341–42 (9th Cir. 1997) ("An argument is typically elaborated more articulately, with more

16

extensive authorities, on appeal than in the less focused and frequently more time pressured environment of the trial court, and there is nothing wrong with that.").

These "waiver" arguments follow Pinterest's strategy throughout this litigation. Pinterest ignores statutory language and asserts supposed technical deficiencies to avoid a decision on the merits. These tactics should be rejected.

### B.    The Lower Court's Preclusion of Claims Was Not a "Just" Sanction Authorized by Rule 16

Although the lower court cited Rule 37(c)(1) multiple times in support of its sanction of precluding infringement claims, it never mentioned Rule 16 anywhere in its decision. *See* 1-ER-0015-17. Instead, Pinterest puts forth Rule 16 as an alternate basis to affirm the lower court's disallowance of alleged infringements that were purportedly not timely identified to Pinterest. *See* Pinterest Br. at 31-37. Pinterest attempts to justify the lower court's preclusion of claims based on Rule 16(f)(1)(C), entitled "Sanctions," and yet argues that such exclusion was not actually a sanction. *See* Pinterest Br. at 34. Pinterest's double speak is nonsensical and wrong on the law. *W.R. Grace*, 526 F.3d at 515.

As Pinterest itself concedes, Rule 16 only permits "any 'just' sanctions." Pinterest Br. at 32 (quoting Fed. R. Civ. P. 16(f)(1)(C)). Here, the sanction of preclusion was not "just," under the reasoning of this Court in *W.R. Grace*, upon which Pinterest heavily relies. *See* Pinterest Br. at 34-37. Although Pinterest selectively quotes from this case, its language cannot be divorced from the facts of

17

that case. *W.R. Grace* was decided within the context of Federal Rules of Criminal Procedure and the government's disclosure obligations:

> The district court's March 2005 pretrial order and the enforcement orders fit comfortably within the court's authority under ***Federal Rules of Criminal Procedure 2 and 16***, and its more general inherent authority to manage its docket. . . . [W]e align ourselves with the other circuit courts that, although not all relying on a uniform source of authority, widely agree that a witness disclosure order ***directed to the government*** is within the district court's discretion to impose and enforce.

*W.R. Grace*, 526 F.3d at 509 (emphasis added).

Thus, this Court made clear in *W.R. Grace* that "the court's inherent power to manage its cases [is] to ensure the fair and effective administration of ***the criminal justice system***." *W.R. Grace*, 526 F.3d at 512 (emphasis added). There are obviously a host of constitutional and statutory protections afforded a criminal defendant to offset the inherent disparity of power between an individual and the state, which are not implicated in a civil litigation setting. *See W.R. Grace*, 526 F.3d at 515 (finding precedents that involve a criminal "defendant's right to present evidence, and not the government's, . . . has no bearing here . . . [b]ecause the Supreme Court has recognized that few rights are more fundamental than that of an accused to present witnesses in his own defense") (internal quotation, edits, and citation omitted). Indeed, the unjust nature of the district court's sanction is highlighted by considering not only the civil context of this case but also the information that was excluded here compared to that excluded in *W.R. Grace*.

18

In *W.R. Grace*, the government failed to disclose its final list of trial witnesses, which was subject to ***mandatory*** pretrial disclosure under Fed. R. Crim. P. 16. *W.R. Grace*, 526 F.3d at 508-09. Here, the lower court's "Deadline for Plaintiff to Serve Final Identification of Alleged Infringements," 6-ER-1408, is found nowhere in the Federal Rules or the Local Rules, or even the judge's standing orders. https://www.cand.uscourts.gov/judges/gilliam-haywood-s-hsg/. The district court's discovery schedule required Mr. Davis to identify each and every instance of infringement on June 1, 2021 ***before*** the close of factual discovery. The discovery cutoff was July 2, 2021 for Mr. Davis, whereas Pinterest was given eight more weeks until September 3, 2021 to continue to pursue discovery and move to compel. 6-ER-1408. In other words, the "Deadline for Plaintiff to Serve Final Identification of Alleged Infringements," 6-ER-1408, was a disclosure rule, created by the lower court for this case alone, without clear guidance as to what was required or its dispositive consequences.

In *W.R. Grace*, the information required to be disclosed by the government, a list of its own trial witnesses, was in the sole possession and control of the government. This is wholly different from the facts in the instant case. Here, as the lower court acknowledged, "Plaintiff needed discovery from Pinterest before he could identify all the alleged infringements at issue in this case," 1-ER-0014, and Pinterest did not timely meet its discovery obligations. 1-ER-0013-14. The lower

court nonetheless excluded evidence that was in the sole possession and control of Pinterest that Pinterest (not its users) (1) made variants from Mr. Davis' works after they were pinned by users; (2) displayed the works on Pinterest's website in the context of advertisement tens of thousands of times; and (3) displayed and distributed those works to users in email and app notifications tens of thousands of times. *See* 2-ER-0035-39 at ¶¶ 19-30; 2-ER-0078-330; 3-ER-332-441; 3-ER-442-630; 4-ER-632-930; 5-ER-932-1065; 5-ER-1066-1077; 5-ER-1163-1230; 6-ER-1232-1297.

Imposing the harsh sanction of preclusion of claims against Mr. Davis, a civil litigant, for not meeting the court's bespoke deadline for the disclosure of information that was not mandatory under any federal or local rule, was not a "just" order under Rule 16(f)(1)(c). The sanction was especially unjust because the precluded evidence was in Pinterest's sole possession, improperly withheld by Pinterest, and produced through compulsion ***after*** the deadline had passed.

### C. The Lower Court's Preclusion of Claims Was Not Authorized by Rule 37

Pinterest also cites this Court's decision in *Wong v. Regents of the University of California* (Pinterest Br. at 37, 44) to justify the lower court's exclusion of claims as a sanction. However, that case, like *W.R. Grace*, supports the finding that the lower court abused its discretion.

20

In *Wong*, 410 F.3d at 1060, the district court excluded certain expert testimony on the ground that the expert witnesses in question were not timely identified. Rule 26(a)(2) expressly requires the disclosure of expert testimony. In turn, the plain language of Rule 37(c)(1) states "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e)," the party is not allowed to use that information or a witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Here, unlike in *Wong*, the deadline Mr. Davis failed to meet was not any disclosure required under Rule 26(a) or (e). Indeed, the lower court's requirement that Mr. Davis serve on Pinterest a final identification of alleged copyright infringements is found nowhere in the Federal Rules.

In *Wong*, 410 F.3d at 1060, the pretrial order at issue "was clear in advising the parties, among other things, that an expert witness not identified by the deadline would not be permitted to testify, and that an expert would not be permitted to testify as to 'any information gathered or evaluated, or opinion formed, after deposition taken subsequent to designation.'" The pretrial order specified that "no expert witness not timely disclosed would be permitted to testify 'unless the party offering the witness demonstrates: (a) that the necessity of the witness could not have been reasonably anticipated at the time the lists were exchanged; (b) the court and opposing counsel were promptly notified upon discovery of the witness; and (c) that

21

the witness was promptly proffered for deposition.'" *Id.* Thus, the district court's pretrial order mirrored Rule 37, and this Court concluded that "Wong's failure to identify necessary witnesses on a more timely basis was, in the eyes of the district court, and in the words of Rule 37, 'without substantial justification' . . . ." *Wong*, 410 F.3d at 1062.

Here, the lower court never indicated in its scheduling order that infringements Mr. Davis failed to timely identify would be excluded from the case. The scheduling order merely stated, "These dates may only be altered by order of the Court and only upon a showing of good cause." 6-ER-1409.

Pinterest makes the strained argument that "Davis's failure to adhere to the court's orders on Interrogatory No. 2 provides a clear and sufficient predicate to invoke Rule 37(c)(1)." Pinterest Br. at 40. There is nothing "clear" or "sufficient" about this. The lower court never held or even suggested that Mr. Davis violated Rule 26(e)(1)(B). Instead the lower court precluded Mr. Davis from introducing instances of alleged infringement because he violated the court's deadline to identify such infringements. 1-ER-0016 ("Plaintiff's repeated attempts to sidestep the Court's deadlines suggest that he may have believed he would not be—or should not be—held to the June 1 deadline. But he ignored this deadline at his own hazard.").

The lower court here abused its discretion because Mr. Davis paid a wholly unexpected and disproportionate price—a sanction of claim preclusion not

authorized by Rule 37(c)(1)—for failure to comply strictly with the lower court's scheduling order.

### D. The Lower Court's Preclusion of Claims Was an Unduly Harsh Sanction

Whether the preclusion of infringement claims did or did not amount to claim-dispositive sanction or whether the sanction was under Rule 37 or Rule 16, that sanction was unduly harsh and constituted an abuse of discretion under the totality of the circumstances.

Typically, both defendants and plaintiffs in civil litigation are subject to the same discovery deadlines. Civil litigants regularly seek extensions of discovery deadlines, and courts grant them as a matter of course. Required disclosures are governed by publicly promulgated rules that are known by, and applied to, all litigants in a particular jurisdiction.

In all those ways, this case was not typical. The district court's discovery schedule set the "Deadline for Plaintiff to Serve Final Identification of Alleged Infringements" on June 1, 2021 over a month *before* the close of fact discovery for Plaintiff (with the Pinterest allowed an additional three months to conduct discovery). 6-ER-1408. Identification by a plaintiff of each and every instance of copyright infringement is not required by the Federal Rules or the Local Rules or the judge's standing orders. Pinterest was allowed an additional eight weeks until September 3, 2021 to "pursue discovery regarding the identified alleged

23

infringements," 6-ER-1408, thereby setting different deadlines for Mr. Davis and Pinterest to file any motions to compel under Civil L.R. 37-3.

The lower court faulted Mr. Davis for failing to request more time to provide the final identification of the alleged infringements. 1-ER-0014. But significantly, the court denied extensions of time irrespective of whether the request was made jointly or singly, whether the request was made because there were pending motions that would substantively impact later motions, or whether there were intervening family matters. The lower court made meeting the schedule the priority without apparent regard as to whether a schedule set in December 2020 still made sense as the case evolved several months later. 6-ER-1391-92 ("Even a short continuance could, therefore, jeopardize the case schedule, a result the Court wishes to avoid if at all possible.").

Nowhere in the scheduling order or in any order issued prior to its summary judgment decision did the lower court indicate that Plaintiff's failure to include a particular alleged infringement on the "Final Identification of Alleged Infringements" would result in the preclusion of those alleged infringements on summary judgment or trial. 6-ER-1408-09. Moreover, the consequences for missing the "Deadline for Plaintiff to Serve Final Identification of Alleged Infringements" was unusually outsized.

24

In determining abuse of discretion, this Court considers what is excluded and how it impacts a case. *Compare W.R. Grace*, 526 F.3d at 514 (no abuse of discretion where district court froze the government's witness list at 233 witnesses); *Wong*, 410 F.3d at 1060 (no abuse of discretion when district court excluded supplemental expert testimony); and *Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 739-40 (9th Cir. 2021) (no abuse of discretion when the noncompliant party repeatedly violated Rule 26(a)(2) and missed deadlines, including by over 134 days) *with Liberty Ins. Corp. v. Brodeur*, 41 F.4th 1185, 1193 (9th Cir. 2022) (abuse of discretion where district court limited the testimony of "the only witness who testified at the trial"); and *Price v. Seydel*, 961 F.2d 1470, 1474 (9th Cir. 1992) (abuse of discretion where lower court precluded a witness whose "testimony was crucial" to the plaintiff's case).

Here, the lower court did not merely exclude certain cumulative or supplemental evidence or testimony. The lower court excluded entire claims of infringement. Sixteen of the fifty-one works listed in Mr. Davis' operative complaint and all alleged infringements based on Pinterest's notifications were no longer "at issue in this case." 1-ER-0017. The impact of this harsh, dispositive sanction was to allow the lower court to give short shrift to an entire category of alleged infringement—Pinterest's email notifications—that clearly had no causal link to

user posts. The evidence was clear that Pinterest took active steps, wholly separate from user storage, to distribute Mr. Davis' works outside Pinterest's website.

The undisputed evidence was that Pinterest wholly controls the notifications, which are in no way controlled or sent at the direction of the user. Pinterest alone determines the number, type, content, and timing of the notifications. *See* 7-ER-1533-38; *see also* 2-ER-0066:16-0067:3, 0068:2-0069:23. The purpose of the email notifications sent by Pinterest is to promote and advertise itself and extend the value of advertisement **outside** its website and app. *See* 7-ER-1533; 5-ER-1140 (notifications "allow casual users to view recommendation content directly in their email without clients logging into the site or installing the mobile app").

Because the § 512(c) safe harbor is an affirmative defense, had Pinterest's email notifications not been excluded, Pinterest could not have met its burden to establish "beyond controversy," *Mavrix*, 873 F.3d at 1052, that the tens of thousands of instances of alleged infringements from Pinterest's email notifications were "by reason of the storage at the direction of a user." 17 U.S.C. § 512(c)(1).

Whereas the lower court's sanction gutted Mr. Davis' case, Pinterest faced little or no prejudice. *See* Pinterest Br. at 43-44. Pinterest does not deny that it produced in August of 2021 the information that Mr. Davis had sought since December 2020, namely the identification of instances in which Mr. Davis' works

had been displayed or used on Pinterest's feeds and email and app notifications. This is the very information that Mr. Davis was required to give to Pinterest by June 2021.

Pinterest claims that Mr. Davis "could, and did, possess information showing precisely where his images appeared," citing a 2015 report by a third party vendor. *See* Pinterest Br. at 44. The lower court, however, concluded otherwise. *See* 1-ER-0014 ("The Court understands that Plaintiff needed discovery from Pinterest before he could identify all the alleged infringements at issue in this case."). The lower court found that information about the instances of alleged infringement were in Pinterest's sole possession and control. *Id.* ("Because notifications are sent directly to users, for example, Plaintiff could not run his own independent searches to find such instances of alleged infringement."). The lower court nonetheless sanctioned Mr. Davis for failing to identify and serve the very same instances of infringement on Pinterest ***before*** Pinterest provided its discovery responses to Mr. Davis.

In sum, the lower court abused its discretion because it imposed an overly harsh sanction under any of the standards that could possibly apply here. Precluding 16 works and all of Pinterest notifications from the case was not "just" under Fed. R. Civ. P. 16(f)(1)(C). Plaintiff's failure to identify those instances of infringement by the "Deadline for Plaintiff to Serve Final Identification of Alleged Infringements" was "substantially justified or harmless" under Fed. R. Civ. P. 37(c)(1). Certainly, the noncompliance did not involve willfulness, fault, or bad faith, and lesser

sanctions were available, such as awarding Pinterest any costs or fees incurred by Pinterest because of the missed deadline. *R&R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1247 (9th Cir. 2012). Pinterest was not harmed because Mr. Davis did not meet the "Deadline for Plaintiff to Serve Final Identification of Alleged Infringements." But significantly, Mr. Davis lost summary judgment on Pinterest's affirmative defense of § 512(c) safe harbor because the lower court was able to sidestep a whole category of alleged infringements that clearly had no causal link to the storage of materials at the direction of the user. The preclusion of Mr. Davis' claims was an abuse of discretion.

## CONCLUSION

Mr. Davis respectfully requests that this Court reverse the lower court's preclusion of Mr. Davis' claims of infringement and reverse the lower court's grant of Pinterest's motion for summary judgment. Mr. Davis requests that the Court remand the matter to the lower court for further proceedings consistent with such an opinion.

Date: April 26, 2023                    Respectfully submitted,

                         **REESE LLP**

By:  _/s/ Sue J. Nam_____
     Sue J. Nam
     Michael R. Reese

     100 West 93rd Street, 16th Floor
     New York, New York 10025
     Telephone: (212) 643-0500
     Facsimile: (212) 253-4272
     *snam@reesellp.com*
     *mreese@reesellp.com*

     Charles D. Moore
     100 South 5th Street, Suite 1900
     Minneapolis, Minnesota 55402
     Tel: (701) 390-7214
     *cmoore@reesellp.com*

     *Counsel for Plaintiff-Appellant*
     *Harold Davis*

29

## <u>CERTIFICATE OF COMPLIANCE FOR BRIEFS (FORM 8)</u>

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

**9th Cir. Case Number:** No. 22-15804

I am the attorney or self-represented party.

**This brief contains 6644 words,** excluding the items exempted by Fed. R.

App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P.

32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P.
     29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because
     *(select only one)*:
     [ ] it is a joint brief submitted by separately represented parties;
     [ ] a party or parties are filing a single brief in response to multiple briefs; or
     [ ] a party or parties are filing a single brief in response to a longer joint
     brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


**Signature**   */s/ Sue J. Nam*_____   **Date** April 26, 2023_____

30